IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MDKC, LLC, et al., | ) |
|     Plaintiffs, | ) ) ) |
| v. | )   No. 4:23-CV-00751-DGK |
| CITY OF KANSAS CITY, MISSOURI, | ) ) ) |
|     Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This lawsuit arises from a new ordinance regulating Short Term Rentals ("STR") in Kansas City, Missouri, that went into effect on June 15, 2023. Plaintiffs are four out-of-state individuals and their respective LLC's who own STRs in Kansas City, Missouri ("Kansas City"). This is the second time this lawsuit is before the Court.[1] *See MDKC, LLC et al. v. City of Kansas City, Mo., et al.*, Case No. 4:23-cv-00395-DGK ("MDKC I").

Now before the Court is Defendant City of Kansas City, Missouri's ("the City") motion to dismiss Counts I–IV of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] ECF No. 6. For the following reasons, the motion is GRANTED.

---

[1] On June 9, 2023, over thirty plaintiffs filed a fifteen-count lawsuit against defendants the City of Kansas City, Missouri ("the City"), Neighborhood Services Department of Kansas City, and the Board of Zoning Adjustment ("the BZA"). *See* MDKC I. On October 2, 2023, the Court granted defendants' motion to dismiss all claims against them, some without prejudice. *See* MDKC I, *Order Granting Mot. to Dismiss*, ECF No. 46. On October 19, 2023, eight Plaintiffs re-filed this lawsuit, bring only four counts against the City as the sole Defendant. ECF No. 1.

[2] The parties requested extensions of time and leave to file excess pages in briefing this motion, ECF Nos. 5, 8, 11, 12. When this case was transferred to the undersigned, the motion to dismiss was fully briefed, so these motions are DENIED AS MOOT.

**Standard**

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

**Background**

Accepting the Complaint's allegations as true, the Court finds the facts to be as follows for purposes of resolving the motion to dismiss.

**2018 Ordinance**

In August 2018, the City implemented an ordinance regulating STRs—lodging accommodations of less than thirty consecutive days—under Chapter 88 of the City Code (the "2018 Ordinance"). Prior to 2018, the City had not specifically addressed STRs in the City's zoning code.

The Complaint alleges the 2018 Ordinance allowed STRs in residential zones if the applicant submitted the required documentation—like consent signatures from fifty-five percent of their surrounding neighbors if the applicant did not live in the STR—and allowed STRs as a

matter of right in business, commercial, and agricultural zones ("non-residential zones") so long as the applicant paid the City's STR application fee.

**2023 Ordinance**

In late 2022, the City conducted a Community Pulse Survey of over 1,700 Kansas City metro residents regarding the needs of the community and STRs and ways in which the City could regulate STRs. On April 19, 2023, the City held a public hearing on a newly proposed STR ordinance. The City limited public testimony to one minute per speaker and cut off speakers after their minute was up. On May 3, 2023, the City held another meeting wherein public testimony was not permitted. On May 4, 2023, the City adopted the proposal in the form of two new ordinances: Ordinance No. 230267 and 230268 (collectively, the "2023 Ordinance"). *See* ECF Nos. 1-2 (No. 230267), 1-3 (No. 230268).

The 2023 Ordinance distinguishes between "resident" and "non-resident" STRs.

- A resident STR "means any short-term rental whose registrant or proposed registrant demonstrates that they are a long-term resident of such dwelling unit[.]" § 56-802(p). A long-term resident is any natural person who "(1) maintains their primary residence on the parcel where the [STR] is located [i.e., lives on the parcel for at least 270 days per year]; and (2) certifies that they will maintain their primary residence on such parcel for a period of twelve months or more[.]" § 56-802(h); *see* § 56-802(m) (defining primary residence).

- A non-resident STR "means any short-term rental whose registrant or proposed registrant has not demonstrated that they are a long-term resident of such dwelling unit." § 56-802(i).

*See* ECF No. 1-3 at 2–3. Importantly, the "registrant" does not have to be the owner of the dwelling unit. *Id.* at 3, § 56-802(n). For instance, a registrant could be a tenant.

The 2023 Ordinance allows resident STRs in residential and non-residential zones. It prohibits non-resident STRs in residential zones but allows them in non-residential zones subject

3

to a 1,000 square foot density requirement, meaning they cannot operate within 1,000 square feet of another STR. Those who obtained a valid STR permit under the 2018 Ordinance are exempt from the 2023 Ordinance's restrictions. *Id.* at 7, § 56-803(c)-(d). Plaintiffs refer to this exemption process as being "grandfathered" in. The Complaint alleges the right to be grandfathered in does not run with the land under the 2023 Ordinance since you have to re-register your property as a STR if there is a change in ownership or the registrant.

The 2023 Ordinance requires third-party booking sites, like Airbnb and VRBO, to require a City STR registration number for all properties listed on their platforms. Properties without registration numbers were de-listed from these platforms in August and September 2023.

The 2023 Ordinance's stated purpose is:

(a) To identify those properties in the City that operate as short-term rentals, to better ensure they operate in a manner consistent with public health and safety, and to gain contact information for code enforcement and compliance;

(b) To allow non-resident short-term rentals to operate in the City in a manner that promotes accountability and preserves the established character of existing neighborhoods; and

(c) To encourage the cooperation of short-term rental booking service providers in accomplishing these purposes.

*Id.* at 2. The 2023 Ordinance came amidst "a recent City Audit highlight[ing] the proliferation of short-term rentals in the City and potential limitations in [the] City's capacity to regulate short-term rentals through its existing regulations [under the 2018 Ordinance]." *Id.* at 1.

Violating the 2023 Ordinance can result in fines of up to $1,000 per day, imprisonment of not more than 180 days, or both. *Id.* at 12, § 56-810 (penalties).

The 2023 Ordinance was passed on May 4, 2023, and went into effect on June 15, 2023.

4

**Pending Applications**

All Plaintiffs applied for a STR permit on or before May 4, 2023.[3] Each of them made substantial investments in their STRs—e.g., property improvements, furnishings, etc.—in reliance on the 2018 Ordinance remaining in place.

On May 16, 2023, the City voided half of the pending applications in the online portal; and on May 31, 2023, denied the rest, including Plaintiffs' applications. Plaintiffs do not clarify how voiding an application differs from denying an application. Regardless, the City did not inform Plaintiffs of their right to appeal either outcome at the time, and the City has not refunded some of their application fees, totaling $277 per property.

Plaintiffs believe the City arbitrarily approved pending applications in the months leading up to the 2023 Ordinance. For instance, the Complaint alleges that between March 1, 2023, and May 4, 2023, the City approved 95 STR applications, some of which were incomplete; and 35 of the issued permits went given to three of Kansas City's most influential businesspeople, despite some of their applications allegedly being incomplete.

In August 2023, VRBO de-listed Plaintiffs' STR listings from its site. On September 15, 2023, Airbnb.com de-listed Plaintiffs' STR listings from its site. Plaintiffs anticipate their damages exceed $500,000 a year from lost STR revenue.

Plaintiffs filed the present lawsuit on October 19, 2023, requesting a declaratory judgment voiding the 2023 Ordinance for violating the dormant Commerce Clause (Count I); violating the Contract Clause (Count II); violating Plaintiffs' substantive due process rights (Count III); and

---

[3] The Complaint alleges Plaintiffs had "everything required by them under law" when they applied for STR permits under the 2018 Ordinance. Compl. ¶ 108. But parts of the Complaint dispute this. For instance, the Complaint states Plaintiff PopandPineHome, LCC—an LLC owned by Plaintiffs Dirk and Kindle Younkin—did not submit the required 55% neighbor consent signatures with their original application, and so their application was denied. Granted, Plaintiffs allege they did not know they needed theses signatures because the City removed that requirement from the online form sometime in the spring of 2023. *Id.* ¶¶ 210–17.

violating Plaintiffs' equal protection rights (Count IV).  On November 13, 2023, the City filed a motion to dismiss all four counts for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  ECF No. 6.

On April 8, 2024, the case was transferred to the undersigned.  On May 4, 2024, after the present motion to dismiss was fully briefed, Plaintiffs filed a supplemental complaint adding an unlawful takings claim (Count V).  This Order addresses only Counts I–IV.

## Discussion

**I.  Count I fails to plead a plausible dormant Commerce Clause violation.**

Count I alleges a violation of the dormant Commerce Clause, U.S. Const. art. 1, § 8, cl. 3. Compl. at 28.  The Court previously dismissed Plaintiffs' dormant Commerce Clause claim without prejudice in MDKC I.

The dormant Commerce Clause prevents "states from enacting 'laws that discriminate against or unduly burden interstate commerce.'"  *IESI AR Corp. v. Nw. Arkansas Reg'l Solid Waste Mgmt. Dist.*, 433 F.3d 600, 604 (8th Cir. 2006) (quotation omitted).  "Under the dormant Commerce Clause, a law is discriminatory if it benefits in-state economic interests while also inordinately burdening out-of-state economic interests."  *Paul's Indus. Garage, Inc. v. Goodhue Cnty.*, 35 F.4th 1097, 1099 (8th Cir. 2022) (quotation omitted).  Importantly, the dormant Commerce Clause is only implicated when the discrimination is between "substantially similar entities."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342 (2008).

For purposes of Plaintiffs' dormant Commerce Clause claim, the 2023 Ordinance implicates three distinct groups of property owners: (1) Kansas City homeowners;[4] (2) in-state-

---

[4] Plaintiffs refer to these individuals as "snowbirds."  For instance, snowbirds live in Kansas City for most of the year but reside in Florida for three months out of the year to escape the cold weather.  While they are in Florida, they can rent out their Kansas City home as a whole-home STR.

investors; and (3) out-of-state investors.[5] Plaintiffs argue the 2023 Ordinance violates the dormant Commerce Clause because it directly discriminates against out-of-state investors (e.g., residents of Kansas and California) by treating them differently than Kansas City homeowners, and there is no legitimate purpose behind the 2023 Ordinance.

Plaintiffs are primarily concerned with the effect the 2023 Ordinance has on "whole-home" STRs—the ability to rent out an entire home—as opposed to "home-sharing," i.e., renting out only a portion of the home while the home's registrant remains on the premise. In this context, Plaintiffs argue the 2023 Ordinance makes it impossible for out-of-state investors to operate whole-home STRs in Kansas City because they are unable to live at the property for 270 days per year by virtue of living out of state. Comparatively, Kansas City homeowners can freely live in their home for 270 days and then operate it as a whole-home STR for the remainder of the year.

Even if the 2023 Ordinance discriminates against out-of-state investors—which the Court doubts for the reasons stated in MDKC I—Kansas City homeowners and investors are not similarly situated for purposes of the dormant Commerce Clause. The Ninth Circuit upheld a similar Ordinance in *Rosenblatt v. City of Santa Monica* in part for this same reason, which the Eight Circuit recently addressed:

> [T]he Commerce Clause was "never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997) (citation omitted). Accordingly, the dormant Commerce Clause doesn't prohibit differential treatment of companies that perform different services, because "any notion of discrimination assumes a comparison of substantially similar entities." *Id.* at 298. "Thus, in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference . . . ." *Id.* at 300. **State and local governments are therefore free to treat vacation homes differently**

---

[5] The Court uses the term "investor" to denote property owners who do not maintain STRs as their primary residence but rather as a separate investment property. In this case, Plaintiffs are out-of-state investors.

**from primary residences,** *Rosenblatt v. City of Santa Monica*, **940 F.3d 439, 453 (9th Cir. 2019)**, humane societies differently from for-profit breeders, *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 497–98 (7th Cir. 2017), and brick and mortar liquor stores differently from their online counterparts, *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36–37 (1st Cir. 2007), to name a few examples.

*Paul's Indus. Garage, Inc.*, 35 F.4th at 1099–100. Thus, Plaintiffs' dormant Commerce Clause claim fails before it begins. Count I is dismissed with prejudice.

II. **Count II fails to plead a plausible Contract Clause violation.**

Count II alleges a violation of the Contract Clause of the United States Constitution, art. I, § 10, cl. 1, and the Missouri Constitution, art. I, § 13. Compl. at 32. The Court previously dismissed Plaintiffs' Contract Clause claim without prejudice in MDKC I.

"The Contract Clause of the Constitution forbids states from interfering with contractual obligations." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022).[6] The Eighth Circuit applies a "two-prong test to determine whether a state has impermissibly interfered with a contract: (1) whether the state law substantially impairs a contractual relationship, which takes into consideration the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights[;] and (2) if the first prong is met, whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose[.]'" *Id.* (cleaned up).

Here, Plaintiffs argue the 2023 Ordinance fails under both prongs because it (1) substantially impairs their ability to fulfill future STR contracts with guests, and (2) has no legitimate purpose and could have been drafted in a more appropriate and reasonable way.

---

[6] Likewise, the Missouri Constitution provides, "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." Mo. Const. art. I, § 13.

Under the first prong, the City argues Plaintiffs have not pled facts showing they contracted with guests before May 4, 2023, i.e., that they had pre-existing contracts, and that those contracts were cancelled when the 2023 Ordinance took effect. Even if they had pled this, the City argues Plaintiffs could not reasonably expect to contract with guests free from City impediment before obtaining a STR permit. And those that had a valid 2018 STR permit are necessarily safeguarded by the 2023 Ordinance since it explicitly exempts them from its restrictions.

Assuming Plaintiffs had pre-existing contracts, Plaintiffs have not articulated how the 2023 Ordinance substantially impaired the contractual relationship between Plaintiffs and future guests. Plaintiffs could not reasonably expect to contract with guests before obtaining a 2018 STR permit—as was required by City ordinance—free from regulation. Although Plaintiffs maintain the City routinely failed to enforce the 2018 Ordinance, that does not give Plaintiffs license to ignore it. Moreover, the fact the City had regulated STRs before via the 2018 Ordinance made it foreseeable that the City could impose additional regulations in the future. *See Nekrilov v. City of Jersey City*, 45 F.4th 662, 675, 679 (3d Cir. 2022) (finding it unreasonable for individuals to conclude from the passage of earlier, less restrictive ordinances, "that they could continue to conduct short-term rentals indefinitely without additional restrictions" even where city officials encouraged individuals to invest in STR properties); *Heights Apartments, LLC*, 30 F.4th at 729 ("[A]n aggrieved party cannot claim that its expectations were disappointed if it was reasonably foreseeable to the party that the government could substantially interfere with its contract.").

Plaintiffs also equate the City's alleged failure to approve their pending applications under the 2018 Ordinance with a Contract Clause violation. *See, e.g.*, Pls.' Resp. in Opp'n at 21, ECF No. 10. However, this argument misses the mark because the City's alleged failure to process applications under the 2018 Ordinance has no bearing on whether the 2023 Ordinance itself

9

violates the Contract Clause. The appropriate remedy would be to appeal those denied applications to the Board of Zoning Adjustment ("BZA"), as it appears some Plaintiffs have already successfully done.[7]

Because Plaintiffs have failed to plead the 2023 Ordinance substantially impairs a contractual relationship under the first prong, the Court declines to address the second prong. Count II is dismissed with prejudice.

### III. Count III fails to plead a plausible substantive due process violation.

Count III seeks a declaratory judgment voiding the 2023 Ordinance for violating Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution and the Missouri Constitution.[8]

The same analysis applies to due process claims under the Missouri Constitution and the United States Constitution. *See Bromwell v. Nixon*, 361 S.W.3d 393, 400 (Mo. 2012). To state a viable substantive due process claim, Plaintiffs must allege (1) the City violated one or more of their constitutional rights arising under the Fourteenth Amendment; and (2) that violation shocks the conscience. *See id.*; *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 749 (8th Cir. 2007); *King v. City of Marion, Arkansas*, No. 19-CV-00207-KGB, 2020 WL 534173, at *11 (E.D. Ark. Feb. 3, 2020). This is a high standard, *see C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010), as Plaintiffs "must demonstrate that the government action complained of is truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law." *Ganley*, 491 F.3d at 749 (quotation omitted); *see Martin v. City of*

---

[7] Since filing the Complaint, the BZA ruled that Plaintiff MDKC, LLC had a prior vested non-conforming use as a STR and the City has scheduled a pre-application meeting with Plaintiff OZMD, LLC to determine whether OZMD, LLC qualified for a Special Use Permit and would consequentially be exempt from the 2023 Ordinance. *See* Supp. Compl., ECF No. 23.

[8] Plaintiffs cite "§1; Mo. Const. art. 1, § 2" as the constitutional provision applying to this claim, Compl. at 35, but the Court assumes Plaintiffs meant to cite Article I, Section 10 of the Missouri Constitution (due process of law).

*Brentwood, Mo.*, 200 F.3d 1205, 1206 (8th Cir. 2000) (observing that the Eighth Circuit takes "a very restrictive view as to when state and local land use planning, zoning, and licensing decisions violate an aggrieved party's federal right to substantive due process").

Plaintiffs claim the 2023 Ordinance violates their "substantive rights of life and property" in two ways: (1) by imposing a density restriction in non-residential zones; and (2) by the City arbitrarily and capriciously denying/approving STR applications under the 2018 Ordinance.

### A. Plaintiffs fail to plausibly allege the density restriction shocks the conscious.

As for the density restriction, the City rightly argues that Plaintiffs failed to satisfy their extraordinary pleading burden under the second prong of the substantive due process analysis.[9]

The Complaint alleges imposing a density restriction in non-residential zones shocks the conscious "because there is no 'character' of a residential neighborhood to protect, nor does an STR create more traffic, noise, or issues than a regular business like a hotel, restaurant or a bar." Compl. ¶ 306. This is merely Plaintiffs' opinion and devoid of "factual enhancement" necessary to survive a motion to dismiss.[10] *See Iqbal*, 556 U.S. at 678. Further, the Court will not place hotels, restaurants, and bars on equal footing as STRs, as each serves an independent and distinct market. As stated previously, the City identified legitimate reasons for passing the 2023 Ordinance—namely accountability in light of the proliferation of STRs in the City—and other courts have upheld similar ordinances passed for public health and safety reasons. *See, e.g.*, *Nekrilov*, 45 F.4th at 679–80 (finding the desire to "reduce nuisance activity associated with short-

---

[9] Alternatively, the City argues Plaintiffs' density claim is barred by claim preclusion because Plaintiffs could have raised the issue in their substantive due process claim in MDKC I but chose not to. In MDKC I, Plaintiffs brought a substantive due process claim on different grounds, and the Court dismissed the claim with prejudice. The Court declines to address the City's claim preclusion argument here since it disposes of this claim on other grounds.

[10] Plaintiffs' argument in response to the City's motion to dismiss on this point is also conclusory and only one sentence: "[W]hen actually considering the facts plead in the Complaint regarding the benefits of STRs, and using common sense, it is nonsensical, and shocks the conscious that you'd limit STRs in a business district, where other businesses, like hotels, are not so limited." Pls.' Resp. in Opp'n at 24, ECF No. 10.

term rentals" were legitimate public purposes for passing STR ordinance); *see also Rosenblatt*, 940 F.3d 439, 443 (9th Cir. 2019) (upholding STR ordinance passed to preserve the City's "available housing stock" and its character, charm, and sense of community after finding STRs negatively affect the community's welfare).

### B. Plaintiffs have not demonstrated that their arbitrary and capricious claim is redressable.

Next, Plaintiffs claim the 2023 Ordinance violated their substantive due process rights because the City arbitrarily and capriciously denied their 2018 STR applications. The City argues, in part, that Plaintiffs fail to explain how a declaratory judgment voiding the 2023 Ordinance would correct the City's alleged error in arbitrarily issuing permits under the 2018 Ordinance. This is essentially a redressability argument. Redressability is a question of standing and asks whether Plaintiffs' injury can be "cured by a favorable decision issued by a court." *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021).

Plaintiffs' response to this argument is perplexing. First, Plaintiffs state the 2023 Ordinance "is the one which limits the density of STRs in non-residential zones prohibitively[, and it] also is the reason that Plaintiff MDKC, LLC cannot get a permit under the 2023 STR Ordinance."[11] Pls.' Resp. in Opp'n at 25, ECF No. 10. This argument frankly makes no sense and would only apply to a subset of the named Plaintiffs.

Second, Plaintiffs state:

> Counsel would seek the Court's leave to amend the conclusions for Count III to include the following paragraph: "The manner in which the 2018 STR Ordinance permits were processed violated Plaintiffs rights to substantive due process, and all 2018 STR Ordinance applicants should be treated the same under the administrative

---

[11] Further, as stated previously, Plaintiff MDKC, LLC successfully appealed the City's permit denial to the BZA and obtained a 2018 STR permit after filing this Complaint, so it is unclear whether this claim still exists with respect to that Plaintiff. Nonetheless, the Court dismisses this claim on other grounds.

12

> 2018 STR Ordinance permitting process, by allowing them to be approved if they can supply all the necessary documentation."

*Id.* at 26. This argument essentially asks the Court for leave to amend the Complaint without filing a motion requesting such. *See* L.R. 15.1. Even if the Court allowed this amendment, which it would not, it still fails to explain how voiding the 2023 Ordinance would cure the City's alleged failure to process STR applications fairly under the 2018 Ordinance. As the City correctly points out, even if the Court issued a declaratory judgment voiding the 2023 Ordinance, such an injunction would not result in permits being issued for Plaintiffs under the 2018 Ordinance.

Because the claim is not redressable, Plaintiffs lack standing to bring it. *See, e.g., Finneman v. Laidlaw*, 57 F.4th 605, 607 (8th Cir. 2023) (reiterating that standing is a jurisdiction prerequisite that asks in part whether the injury complained of "would likely be redressed by judicial relief"). Count III is therefore dismissed with prejudice.

### IV. Count IV fails to plead a plausible equal protection violation.

Count IV seeks a declaratory judgment voiding the 2023 Ordinance for "violation of equal protection based on discriminatory treatment" under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Missouri Constitution. Plaintiffs claim they were discriminated against when their applications under the 2018 Ordinance were denied while other applicants were approved.

This claim is denied for the reasons stated above. Even if the City discriminated against Plaintiffs by denying their applications under the 2018 Ordinance while granting others, Plaintiffs have failed to show how the requested relief—voiding the 2023 Ordinance—would cure the issue. Accordingly, Count IV is dismissed with prejudice.

### Conclusion

For the reasons stated above, the City's motion to dismiss Counts I–IV is GRANTED.

**IT IS SO ORDERED.**

Date: June 5, 2024                          /s/ Greg Kays
                                                               GREG KAYS, JUDGE
                                                                UNITED STATES DISTRICT COURT