IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MDKC, LLC and OZMD, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-00751-DGK |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER STRIKING COUNT V AND AUTHORIZING A NEW COMPLAINT**

This lawsuit arises from an ordinance regulating Short Term Rentals ("STR") in Kansas City, Missouri. Plaintiffs are suing Defendant City of Kansas City, Missouri ("the City") for a variety of constitutional claims. This lawsuit is related to a previous lawsuit, *MDKC, LLC et al. v. City of Kansas City, Mo., et al.*, Case No. 4:23-cv-00395-DGK ("Lawsuit I") brought against the City of Kansas City, Missouri; the Neighborhood Services Department; the Board of Zoning Adjustment; and several individual city employees. After the Court dismissed all claims in Lawsuit I, a subset of the plaintiffs in that case filed the present lawsuit ("Lawsuit II") against the City. Plaintiffs' counsel in both cases is Megan Duma, and Plaintiffs in both cases include limited liability companies wholly owned by Ms. Duma.[1]

The initial Complaint in this case brought four counts against the City. ECF No. 1. Defendant moved to dismiss all four counts, and while this motion was pending, the Court granted Plaintiff leave to add a "supplemental" count, Count V. The Court subsequently granted

---

[1] The Court notes that Ms. Duma is listed as a plaintiff in the case caption of both cases, but she is not identified in the body of any claim in either case as asserting a claim for relief against Defendant. The Court concludes she and other individuals have been mistakenly included in the captions of both cases.

Defendant's motion to dismiss Counts I–IV, ECF No. 26, leaving Count V and the two LLCs controlled by Ms. Duma as the sole Plaintiffs in this lawsuit.

Now before the Court is the City's motion to dismiss Count V. ECF No. 28. For the reasons discussed below, the Court strikes Count V and directs Plaintiffs to file a new complaint which clearly identifies the remaining Plaintiffs' taking claim(s) in separate counts. Each count shall identify which Plaintiff is bringing exactly what kind of taking claim and shall state the factual allegations supporting that claim.

The Court cautions Plaintiffs to craft this next complaint—which will essentially be their fourth—carefully. Plaintiffs will not get a fifth bite at the apple.

## Background

### PROCEDURAL HISTORY

The complaint in Lawsuit I was filed on June 9, 2023. It alleged complex constitutional claims, including unlawful takings, violations of the dormant Commerce Clause and the Contract Clause, and substantive and procedural due process violations. It was somewhat scattershot and difficult to follow, asserting fifteen different counts, several of which were not actually causes of action but rather requests for relief. The Court granted defendants' motion to dismiss in its entirety.

On October 19, 2023, Plaintiffs filed this lawsuit, Lawsuit II.[2] The Complaint alleged four counts, including claims for violations of the dormant Commerce Clause, the Contract Clause, the Equal Protection Clause, and a substantive due process violation.

On November 13, 2023, Defendant filed its motion to dismiss Counts I–IV. ECF No. 6. While pending, Plaintiffs moved to add a "supplemental" claim, Count V, alleging an unlawful

---

[2] Although the case should have been assigned to the undersigned judge from the outset because it was a refiled case that had originally been assigned to the undersigned, due to an administrative oversight, it was not. The case was reassigned to the undersigned on April 8, 2024.

taking of property rights under the Fifth and Fourteenth Amendments *and* the Missouri Constitution. Attached to the motion was the proposed Count V. ECF No. 18-1. Defendant opposed the request for leave to amend, arguing among other things that the proposed claim was futile because it failed to plausibly allege that Plaintiffs were harmed by an official policy, act, or ratification of an act by those with policymaking authority. It also argued the proposed claim failed to allege any staff members exercised policymaking authority for the City on such matters.

On May 3, the Court granted Plaintiffs leave to file the additional claim. Plaintiffs filed the new claim the next day. ECF No. 23. The claim Plaintiffs filed, however, is different and considerably more detailed than the proposed claim attached to their motion; the changes appear designed to address the shortcomings Defendant identified in opposing Plaintiffs' motion for leave to amend. *Compare* ECF No. 18-1, *with* ECF No. 23.

On June 5, 2024, the Court granted Defendant's motion to dismiss Counts I–IV, resulting in the dismissal of several Plaintiffs, thus leaving one count remaining in this case (Count V) and two Plaintiffs, the two limited liability companies Ms. Duma controls. These companies are Plaintiff MDKC, LLC ("MDKC") and Plaintiff OZMD, LLC ("OZMD").

On June 20, 2024, Defendant filed the pending motion to dismiss Count V.

Accepting the Amended Complaint's allegations as true, ECF No. 23, the following facts are relevant to the motion to dismiss.

On May 4, 2023, the City adopted two new ordinances regulating STRs in Kansas City (collectively, the "2023 Ordinance"). The Ordinance, which went into effect June 15, 2023, restricts STRs to certain zones around Kansas City. For instance, it prohibits "non-resident" STRs from operating in residential zones. Certain properties, however, are exempt from the 2023 Ordinance, chief among them properties that obtained a STR permit under the prior STR

3

ordinance, and properties with a Certificate of Legal Non-Conforming Use ("CLNU") or Special Use Permit ("SUP").

As a result of the 2023 Ordinance, third-party booking sites like Airbnb.com and VRBO.com now require a city-issued STR registration number for all properties listed on their platforms. Airbnb.com and VRBO.com delisted properties without STR registration numbers—including Plaintiffs' properties—from their platforms in August and September 2023. Once delisted, Plaintiffs were unable to operate their properties as STRs. In response, Plaintiffs took the following courses of action:

### PLAINTIFF MDKC

MDKC owns and operates a property located at 1704 Jefferson Street ("Jefferson Street"). MDKC submitted a CLNU application for this property on July 20, 2023, to operate it as a STR. While the CLNU application was pending, Airbnb.com and VRBO.com delisted Jefferson Street from their platforms. On October 16, 2023, the City denied the CLNU application. MDKC appealed to the Board of Zoning Adjustment ("BZA"), and on February 13, 2024, the BZA allegedly overturned the City's decision and ruled that MDKC had a prior vested non-conforming use to operate Jefferson Street as a STR. The BZA's decision became final on March 18, 2024, and MDKC was able to operate Jefferson Street as a STR thereafter.

### PLAINTIFF OZMD

OZMD owns and operates a property located at 511 Gladstone Boulevard ("Gladstone Boulevard"). OZMD is currently trying to obtain a SUP for this property to operate it as a STR. OZMD alleges this process has been exceedingly difficult and time consuming because the City intentionally refused to communicate with Ms. Duma with respect to the property for months. OZMD was eventually able to file a SUP application on March 8, 2024. But the application was

4

Case 4:23-cv-00751-DGK   Document 37   Filed 08/23/24   Page 4 of 8

denied because no "pre-application meeting" had occurred (the City requires this meeting before a SUP application can be filed). OZMD alleges this was yet another attempt to "stonewall" it from operating Gladstone Boulevard as a STR.

While Count V is silent on the status of the SUP application, the parties' briefing suggests the pre-application meeting was held on June 18, 2024, and the next step in the process is a hearing before the BZA. The record is silent as to when that hearing will be scheduled though. Thus, at present, OZMD does not have a SUP and cannot legally operate Gladstone Boulevard as a STR under the 2023 Ordinance.

## Discussion

As an initial matter, the Court notes the Count V Plaintiffs filed is noticeably different from the proposed Count V Plaintiffs presented to the Court. For instance, the proposed supplemental Count V did not include any of the present references to official customs or policies, nor did it mention official employees by name as having policy-making authority, that is, it did not appear to raise a *Monell* claim. OZMD also requested $10,000 less in damages. In short, the Count V Plaintiffs filed is not what the Court approved for filing, and as a result, it is an unauthorized filing. *See* L.R. 15.1 (requiring the proposed pleading be attached to the motion for leave to amend). Although Defendant has not objected and the difference may not ultimately matter (the pleading that Plaintiffs filed is arguably an improvement over the proposed pleading), Plaintiffs' counsel's inattention to detail, the rules, and the substantive law should be addressed.[3] Accordingly, on its own motion, the Court strikes Count V (ECF No. 23).

---

[3] Granted, constitutional litigation is a complex area of law. But Ms. Duma is a licensed attorney who has chosen to practice in it.

5

With respect to the substance of the Count V Plaintiffs filed, the Court notes that while it is pled as if it were bringing one claim, it arguably asserts a multiplicity of claims, potentially up to eight different claims.

Consider the following. First, the filed Count V alleges an unconstitutional taking of MDKC's property rights *and* OZMD's property rights, apparently assuming the legal analysis is the same for both properties. As Defendant points out, the facts with respect to both properties are different, so the analysis is potentially quite different.

Second, Plaintiffs are asserting taking claims under the Fifth and Fourteenth Amendments to the United States Constitution *and* under Article 1, Section 26 of the Missouri Constitution. These are separate violations, even if the legal analysis might be the same, and so they should be pled separately.

Third and most importantly, it is unclear if Plaintiffs are alleging a per se or a regulatory taking occurred with respect to each property. The caption for Count V states "Unlawful Taking" but does not specify which kind of taking. MDKC's briefing variously alleges both. *See* Suggestions in Opp'n at 7 ("A per se taking has occurred here."), 9 (noting "the date of a regulatory taking may begin on the date the challenged regulation was either enacted or applied to the subject property"), 10 ("And per se takings can certainly be temporary."), 11 ("If the Plaintiff did not have a LNCU, then the City's action may be considered a regulatory taking as to its use as a STR."), 13 ("In summary, Plaintiffs LNCU rights were established in February 2018. They were physically taken in a per se taking in August 2023."), ECF No. 31. OZMD's briefing does not explicitly mention either, but rather appears to argue a due process violation occurred. *See id.* at 22 (explaining "Plaintiff also had a right to due process in applying for a [SUP]"). Further, it is unclear which vehicle(s) Plaintiffs are trying to raise their taking claims under. While the Fifth

6

and Fourteenth Amendments provide an implied right of action against local governments for takings, Plaintiffs also allege facts suggesting they are trying to raise a § 1983 *Monell* claim. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 721 n.4 (1978) (Rehnquist J., dissenting). While Plaintiffs are free to plead in the alternative, they need to plead each claim clearly and separately.

Plaintiffs' failure to clearly identify what kind of taking claim(s) they are asserting after so much ink has been spilled briefing these issues—three pleadings across two lawsuits have been filed and subjected to motions to dismiss—is unacceptable. Defendant is entitled to fair notice of Plaintiffs' claim(s) and the grounds on which they rest. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007). To ensure this case is resolved on the merits, however, the Court will give Plaintiffs one final opportunity to file a pleading that conforms to federal pleading standards.

Accordingly, Plaintiffs may file a new complaint which clearly lays out the remaining Plaintiffs' taking claim(s) in separate counts. Each count shall identify which Plaintiff is bringing exactly what kind of taking claim (that is, exactly what legal theory is being asserted) and shall state the factual allegations which support that claim. To be clear, *only* Plaintiffs MDKC and OZMD remain in this lawsuit. Any new complaint shall be filed on or before September 6, 2024. No extensions of time will be granted absent extraordinary circumstances.

## Conclusion

For the reasons stated above, the Court strikes Count V (ECF No. 23) as an unauthorized pleading but authorizes the remaining Plaintiffs to file a new complaint asserting any taking claims, subject to the limitations identified above. Accordingly, Defendant's motion to dismiss, ECF No. 28, is DENIED AS MOOT.

**IT IS SO ORDERED.**

7

Date: August 23, 2024  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT