IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MDKC, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-00751-DGK |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This lawsuit arises from an ordinance regulating Short Term Rentals ("STRs") in Kansas City, Missouri, that went into effect on June 15, 2023 (the "2023 STR Ordinance"). The original plaintiffs were four out-of-state individuals and their respective LLCs who own STRs in Kansas City and who are suing Defendant City of Kansas City, Missouri ("the City") for a variety of constitutional violations.

The procedural history here is critically important but far too lengthy for a full discussion in this introduction. Nevertheless, the Court provides a brief history here to assist in understanding the current motions. This case ("Lawsuit II") is a continuation of a prior case: *MDKC, LLC v. City of Kansas City, Mo.*, Case No. 4:23-cv-00395-DGK ("Lawsuit I"). The Court dismissed Lawsuit I for failure to state a claim. *See* Lawsuit I, ECF No. 46.[1]

In Lawsuit II, after the Court dismissed most claims for failure to state a claim and struck an impermissibly-filed supplemental pleading, *see* Lawsuit II, ECF Nos. 26, 37, the only remaining plaintiffs were supposed to be MDKC, LLC ("MDKC") and OZMD, LLC ("OZMD")

---

[1] Throughout this order, the Court will use Lawsuit I and Lawsuit II to specify which case it is referring to. It will do this in the body of textual sentences and in the citation sentences. So, for example, if the Court cites to the complaint in Lawsuit I, the citation sentence would read: "Lawsuit I, ECF No. 1." On the other hand, for example, if the Court cites to the original complaint in Lawsuit II, the citation sentence would read: "Lawsuit II, ECF No. 1."

(collectively, "Plaintiffs") and the only remaining claims were supposed to be Takings claims, *see* Lawsuit II, ECF No. 37 at 2, 6–7. The Court provided Plaintiffs—which are wholly owned by their counsel Megan Duma—"one final opportunity" to file a complaint within those clear parameters. *See* Lawsuit II, ECF No. 37 at 3, 7.

In response, Plaintiffs filed a sprawling forty-four-page, eight-count complaint (the "Complaint") against the City and some of its officials and employees (collectively, "Defendants"). Lawsuit II, ECF No. 38. The Complaint raises several Takings claims, but also adds Procedural Due Process, Substantive Due Process, First Amendment, and civil rights conspiracy claims. *Id.* It further adds Ms. Duma as a plaintiff and the City's two attorneys—who have been representing it in this litigation—as defendants, among others. *Id.*

Now before the Court are Defendants' motions to dismiss: (1) under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's order and the Federal Rules of Civil Procedure, Lawsuit II, ECF No. 44; and (2) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, Lawsuit II, ECF No. 47.

For the reasons stated below, the motions are GRANTED, and this case is DISMISSED WITH PREJUDICE.

**Standards of Review**

Under Rule 41(b), Defendants may move to dismiss a case with prejudice if Plaintiffs "fail[] to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." To determine whether dismissal is appropriate, the Court "employs a balancing test that focuses foremost upon the degree of egregious conduct which prompted the order of dismissal and to a lesser extent upon the adverse impact of such conduct upon both the defendant and the administration of justice in the district court." *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216,

1219 (8th Cir. 1998) (internal quotations omitted). The Eighth Circuit has warned that the "sanction imposed by the district court must be *proportionate* to [Plaintiffs'] transgression[s], and that dismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008) (citation modified and emphasis in original). But in deciding whether to dismiss with prejudice, the Court need not find that Plaintiffs "acted in bad faith, only that [they] acted intentionally as opposed to accidentally or involuntarily." *Rodgers*, 135 F.3d at 1219.

In deciding whether to dismiss with prejudice under Rule 41(b), the Court "should first consider whether any less-severe sanction could adequately remedy the effect of the delay on the [C]ourt and the prejudice to the opposing party." *Smith*, 526 F.3d at 406. While it is not required, the Court should typically warn Plaintiffs that they are "skating on the thin ice of dismissal" before doing so. *Rodgers*, 135 F.3d at 1221. The Eighth Circuit has emphasized that "[a]lthough dismissal with prejudice is an extreme sanction," it gives the Court "a large amount of discretion in regulating and sanctioning misconduct that occurs in proceedings before it." *Good Stewardship Christian Ctr. v. Empire Bank*, 341 F.3d 794, 797 (8th Cir. 2003).

Under Rule 12(b)(6), the Court may dismiss a claim if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the [C]omplaint's factual allegations and view them in the light most favorable to . . . [P]laintiffs." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, the Complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when . . . [P]laintiff[s] plead[] factual content that allows the [C]ourt to draw the

3

reasonable inference that . . . [D]efendants [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs need not demonstrate the claim is probable, only that it is more than just possible. *Id.*  In reviewing the Complaint, the Court construes it liberally and draws all reasonable inferences from the facts in Plaintiffs' favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Procedural History

This case truly began on June 9, 2023, when over thirty plaintiffs in Lawsuit I filed a fifteen-count complaint against the City, some of its departments, and several of its employees. Lawsuit I, ECF No. 1.  The plaintiffs were STR owners in Kansas City, and they were primarily challenging the constitutionality of the 2023 STR Ordinance as well as the way City had dealt with their applications that were pending before the 2023 STR Ordinance went into effect.  *See* Lawsuit I, ECF No. 46 at 5–21 (outlining and dismissing the claims).  The plaintiffs in Lawsuit I included MDKC and OZMD.  And although Ms. Duma was also nominally a plaintiff mentioned in the case caption, she was not discussed in the complaint.  *See* Lawsuit II, ECF No. 37 at 1 n.1 (noting this issue).  Ms. Duma was the sole plaintiffs' attorney in Lawsuit I.

On June 12, 2023, only three-days before the 2023 STR Ordinance was set to take effect, Ms. Duma informed the Court that she would be filing a temporary restraining order ("TRO") early that week and wanted a hearing on the matter.  Lawsuit I, ECF No. 4.  The Court then entered an order telling the plaintiffs that if they wanted a hearing, they "shall outline the outcome determinative facts that require a hearing in [their] motion for a TRO." *Id.*  Shortly after entry of this order, the plaintiffs filed a combined motion for a TRO and a preliminary injunction.  Lawsuit II, ECF No. 5.  In short, the plaintiffs sought an order restraining the defendants from enforcing the 2023 STR Ordinance until the Court decided the preliminary injunction motion.  *Id.* at 1.

4

Despite asking for a hearing in the motion, plaintiffs did not outline any outcome determinative facts like the Court ordered them to do.

On June 13, 2023, the defendants filed an eight-page opposition to the TRO. Lawsuit I, ECF No. 8. They simultaneously asked for a short extension to respond to the preliminary injunction portion of the motion. Lawsuit I, ECF No. 7. That same day, the plaintiffs filed a reply in support of their TRO request. Lawsuit I, ECF No. 9.

On June 14, 2023, the Court denied the TRO and granted the defendants' extension request. In that order, the Court noted numerous deficiencies in the plaintiff's TRO briefing. Lawsuit I, ECF No. 10. First, it noted that they had not outlined any facts warranting a hearing as previously ordered. *Id.* at 2 n.1. Second, the Court noted that the "[p]laintiffs' brief cite[d] almost no caselaw; it even fail[ed] to cite the standard for issuing a temporary restraining order." *Id.* at 3. The Court specifically observed how this latter issue violated the Federal Rules of Civil Procedure and the Local Rules. *Id.* Third, the Court noted that the plaintiffs' brief was poorly organized, failed to cite elements of their claims, and failed to cite the complaint. *Id.* at 4. The Court then denied the motion on the merits because the plaintiffs had not cited—let alone satisfied—the TRO standard. *Id.* at 3–7.

In the same order, the Court ordered the defendants to file their opposition to the preliminary injunction on or before June 27, 2023, and it ordered the plaintiffs to file any reply "within seven days" of the defendants' opposition. *Id.* at 2. The Court also stated that after the preliminary injunction is "fully briefed," "the parties may request a hearing on the matter, which the Court will grant if necessary." *Id.* at 2 n.2.

The defendants filed their opposition brief on June 27, 2023, so the plaintiffs' reply brief was due on July 5, 2023. The plaintiffs did not file by the deadline. Instead, two days after the

5

deadline, they filed a motion to exceed the page limitations for their reply, Lawsuit I, ECF No. 17, and then without seeking leave for the missed deadline or waiting for the page limitation ruling, the plaintiffs filed a thirty-nine-page reply brief on July 10, 2023, Lawsuit I, ECF No. 18. Contrary to the Court's prior order, they also filed two motions for hearings even though the preliminary injunction briefing was not complete. *See* Lawsuit I, ECF Nos. 14, 19.

On July 17, 2023, since the plaintiffs violated multiple court orders, the Court struck the plaintiff's supplemental motions for a hearing and their tardy reply brief. Lawsuit I, ECF No. 24 at 1–3. At the end of the order, the Court "cautioned" the plaintiffs "to follow Court deadlines and instructions moving forward." *Id.* at 3.

The plaintiffs then sought leave to file out of time their reply in support of their preliminary injunction and to exceed the page limitations on that. Lawsuit I, ECF No. 25. The Court granted that motion, but it made clear that it "will not consider new arguments raised for the first time in reply briefs." Lawsuit I, ECF No. 28 at 1. The plaintiffs filed a reply brief that raised new arguments. Lawsuit I, ECF No. 29. The defendants then sought leave to file a sur-reply brief, Lawsuit I, ECF No. 35, and the Court granted the motion because plaintiffs raised new arguments despite the Court "specifically stat[ing] it would not consider new arguments raised for the first time in reply briefs," Lawsuit I, ECF No. 36.

While the preliminary injunction briefing was concluding, the defendants filed a motion to dismiss all claims under Rule 12(b)(6). Lawsuit I, ECF No. 22. On October 2, 2023, the Court granted the motion because the complaint failed to state a claim. Lawsuit I, ECF No. 46. In doing so, the Court noted the following deficiencies with the complaint as well as the plaintiffs' briefing: (1) several of the counts in the complaint were not claims but were requests for relief; (2) parts of the plaintiffs' response were so threadbare that they constituted waiver; (3) the briefing arguably

mischaracterized the defendants' arguments; (4) the briefing muddled the facts pled in the complaint; and (5) the briefing asserted new facts and legal theories not pled in the complaint. *Id.* at 5–8. After dismissing all the claims, the Court denied all the remaining motions as moot. *Id.* at 21.

That did not end the saga, however. On October 19, 2023, only a few weeks after Lawsuit I's dismissal, a subset of the Lawsuit I plaintiffs filed Lawsuit II against the City. The plaintiffs are companies that own STRs in Kansas City, and they include MDKC and OZMD. These latter two companies are solely owned by Ms. Duma, and she has been the sole counsel in both cases. The initial four-count complaint against the City alleged that the 2023 STR Ordinance should be invalidated because it violated: (1) the Dormant Commerce Clause; (2) the Contract Clause; (3) the Substantive Due Process Clause; and (4) the Equal Protection Clause. Lawsuit II, ECF No. 1.

The City promptly moved to dismiss the case. Lawsuit II, ECF No. 6. After the motion to dismiss was fully briefed, Plaintiffs filed a motion for leave to file a supplemental pleading that raised Takings claims under the United States and Missouri Constitutions. Lawsuit II, ECF No. 18.[2] Lawsuit II was initially assigned to a different judge, but after the City's motion was fully briefed, it was transferred to the undersigned since the case is a continuation of Lawsuit I. The Court then granted Plaintiffs leave to file their proposed Count V that raised Takings claims because the basis of the claims did not arise until after the original complaint had been filed and because the City had not demonstrated the proposed Count V was futile. Lawsuit II, ECF No. 22.

---

[2] Even though the motion opaquely referred to the motion being on behalf of the "above-captioned Plaintiffs," *id.* at 1, and even though the case caption referenced above this line listed the Plaintiffs as "MDKC LLC, et al.", *id.*, the supplemental pleading attached to the motion made clear that the proposed "Count V" claims were only on behalf of MDKC and OZMD, Lawsuit II, ECF No. 18-1.

Plaintiffs then filed a supplemental pleading that did not match what they had proposed to the Court. Lawsuit II, ECF No. 23. But the Court did not notice this at the time.

The Court granted the City's motion to dismiss the original four counts with prejudice, finding that each failed to state a claim. Lawsuit II, ECF No. 26. The City then moved to dismiss the last count—Count V from the supplemental pleading—for failure to state a claim. Lawsuit II, ECF No. 28.

Once the Court began working on this motion to dismiss, it noticed that the filed supplemental pleading was not what the Court had approved for filing. For example, "the *proposed* supplemental Count V did not include any of the . . . references [in the filed supplemental pleading] to official customs or policies, nor did it mention official employees by name as having policy-making authority, that is, it did not appear to raise a *Monell* claim." Lawsuit II, ECF No. 37 at 5 (emphasis added). Since what Plaintiffs ultimately filed was an "unauthorized filing" under the Local Rules and not what the Court had approved, the Court struck the supplemental pleading (hereinafter, the "Order"). *Id*. at 5. In doing so, the Court noted that "Plaintiffs' counsel's inattention to detail, the rules, and the substantive law should be addressed." *Id.*

The Court then gave Plaintiffs one final chance to plead their Takings claims. The Court ordered them "to file a new complaint which clearly identifies the remaining taking claim(s) in separate counts." *Id.* at 2. The Court stated that "[e]ach count shall identify which Plaintiff is bringing exactly what kind of taking claim and shall state the factual allegations supporting that claim." *Id*. The Court "caution[ed] Plaintiffs to craft this next complaint—which will essentially be their fourth—carefully [because] Plaintiffs will not get a fifth bite at the apple." *Id*.

The Court pointed out the pleading deficiencies in all the putative Takings claims in the unauthorized supplemental pleading. *Id.* at 5–7. The Court stated that Plaintiffs' "failure to

8

clearly identify what kind of taking claim(s) they are asserting after so much ink has been spilled briefing these issues—three pleadings across two lawsuits have been filed and subjected to motions to dismiss—is unacceptable." *Id.* at 7. The Court stated that the City "is entitled to fair notice of Plaintiffs' claim(s) and the grounds on which they rest." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court gave "Plaintiffs one final opportunity to file a pleading that conforms to federal pleading standards." *Id.*

The Court then identified which claims could be in the Complaint and who could bring them:

> Plaintiffs may file a new complaint which clearly lays out the remaining Plaintiffs' taking claim(s) in separate counts. Each count shall identify which Plaintiff is bringing exactly what kind of taking claim (that is, exactly what legal theory is being asserted) and shall state the factual allegations which support that claim. To be clear, *only* Plaintiffs MDKC and OZMD remain in this lawsuit.

*Id.* The Court concluded the Order by reiterating that it was authorizing "Plaintiffs to file a new complaint asserting any taking claims, subject to the limitations noted above." *Id.*

In response, Plaintiffs filed the Complaint against the City and some of its officials and employees, alleging eight counts: (1) a per se Takings Clause claim; (2) a regulatory Takings Clause claim; (3) another per se Takings Clause claim; (4) another regulatory Takings Clause claim; (5) a Procedural Due Process Clause claim; (6) a Substantive Due Process Clause claim; (7) a First Amendment retaliation claim; and (8) a civil rights conspiracy claim under 42 U.S.C. § 1985(2). Lawsuit II, ECF No. 38. The Complaint added Ms. Duma as a plaintiff, and it also added as defendants the two attorneys—Sarah Baxter and Bret Kassen—who have represented the City throughout Lawsuit I and Lawsuit II.

This latter addition caused Defendants to have to obtain new counsel to litigate the case. Defendants then filed the instant motions to dismiss. Those motions are now fully briefed.

**Factual Background**

The Court accepts the Complaint's lengthy allegations as true but does not restate them all here for the sake of brevity. The Complaint seeks to hold Defendants liable for alleged unconstitutional policies or customs that delayed or prevented Plaintiffs from getting permits to operate as STRs. According to the Complaint, this led to various per se and regulatory Takings Clause violations as well as a Procedural Due Process violation. The Complaint also alleges that the City and some of its officials and employees "stonewalled" Plaintiffs and Ms. Duma to prevent them from getting their permits and to prevent or delay them from accessing the courts to pursue their claims. These latter issues are alleged to be violations of the Substantive Due Process Clause, the First Amendment, and 42 U.S.C. § 1985(2).

**Discussion**

Defendants' motions seek the same result: dismissal with prejudice. But they try to get there in different ways. In their first motion, Defendants argue that the Court should dismiss this case under Rule 41(b) because the Complaint is the latest example of a filing that violates the Court's orders and the Federal Rules of Civil Procedure. In the second motion, Defendants argue that the Complaint fails to state a claim. The Court addresses each motion in turn.

**I.    Rule 41(b) dismissal with prejudice is appropriate.**

As noted above, the Court employs a balancing test that looks mostly at the egregiousness of Plaintiffs' actions, but also to a lesser extent at the adverse impact to Defendants and the Court from Plaintiffs' actions. *See Rodgers*, 135 F.3d at 1219. Defendants argue that all the factors under the Rule 41(b) analysis favor dismissal, while Plaintiffs contend that none of them do. The Court addresses the egregiousness factor before turning to the prejudice factors.

### A. Plaintiffs willfully violated the Order and the Federal Rules of Civil Procedure.

Defendants argue that the Order made clear that only Takings claims could be raised in the Complaint and only by Plaintiffs MDKC and OZMD. They argue that Plaintiffs violated the Order when the Complaint raised more than just the authorized claims, added Ms. Duma as a plaintiff, and added new defendants. They further argue that this violation was willful and not isolated, as evidenced by Plaintiffs' repeated failures to follow other court orders and the Federal Rules of Civil Procedure in Lawsuit I and II. Ms. Duma—largely speaking in the first person—responds that the violations were the result of her lack of experience and misunderstanding of orders.

The Court finds that Plaintiffs —acting through their sole owner and attorney Ms. Duma[3]— willfully violated the Order (Lawsuit II, ECF No. 37) and the Federal Rules of Civil Procedure. The Order repeatedly and clearly stated that the Complaint could only raise Takings claims, and the only plaintiffs authorized to file were Plaintiffs. But the Complaint added Ms. Duma as a plaintiff and raised at least three non-Takings claims. This violated the Order.

And this violation was willful. Plaintiffs suggest that the Order invited them to file more than Takings claims. Not so. The Order stated twice in the introduction, three times in the body, and once in the conclusion that *only* Takings claims could be raised. What is more, the supplemental pleading Plaintiffs were originally authorized to file—as well as the unauthorized one they later filed that spurred the Order—*only* raised Takings claims. There is no way to read the Order to authorize Plaintiffs to file anything other than Takings claims. As such, Plaintiffs willfully violated the Order when they filed First Amendment, Substantive Due Process, and

---

[3] In considering whether to impose the ultimate sanction, the Eighth Circuit has considered whether the plaintiff is being unfairly punished for the egregious conduct of its attorney. *See Siems v. City of Minneapolis*, 560 F.3d 824, 827 (8th Cir. 2009). That does not apply here because MDKC and OZMD are both solely owned, operated, and represented by Ms. Duma. So for the sanctions analysis, they are considered one and the same.

conspiracy claims. They further violated the Order when they added Ms. Duma as a plaintiff. To suggest anything to the contrary is not just frivolous, it is a lie. Simply put, Plaintiffs knew what the Order meant, and they knowingly violated it. *See Rodgers*, 135 F.3d at 1219.

And while the willful violation of a single order is enough to support dismissal under Rule 41(b), *see Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994), there is additional record evidence that demonstrates that this is simply the latest instance in a long line Plaintiffs' willful disobedience, *see Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527–28 (8th Cir. 2000). Earlier in Lawsuit II, the Court authorized Plaintiffs to file their proposed supplemental pleading, ECF No. 22, but they violated the Court's order and filed a different version of the pleading, ECF No. 23. And in Lawsuit I, as the Court noted at the time, Plaintiffs violated several different court orders regarding what should be in filings and when they should be filed. *See* Lawsuit I, ECF No. 10 at 2 n.1, ECF No. 24 at 2–3, ECF No. 36. Like their defenses of the violations in Lawsuit II, Plaintiffs provide frivolous arguments for why their actions in Lawsuit I were not willful violations. But none of the arguments rebut the clear nature of the orders or Plaintiffs' intentional—as opposed to accidental— violation of them. *See Rodgers*, 135 F.3d at 1219. To the contrary, the fact that the Court repeatedly noted, warned, and disciplined Plaintiffs for previous violations underscores the willfulness of their most recent violation.

It is not just violations of orders that troubles the Court, however. Plaintiffs have also repeatedly violated the Federal Rules of Civil Procedure. Despite four attempts in Lawsuit I and II, Plaintiffs have yet to file a complaint that complies with Rule 8's "short and plain statement" requirement. Instead, they have repeatedly filed disorganized and incoherent pleadings that have failed to put Defendants on notice of what claims and facts they need to defend against. *See Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir. 2005). Their motions have, at times, violated Rule

12

Case 4:23-cv-00751-DGK    Document 62    Filed 07/07/25    Page 12 of 18

7(b)(1)(B) by failing to cite any caselaw, standards, or facts that show they are entitled to relief. *See* Lawsuit I, ECF No. 10 at 3. And their briefs opposing Defendants' motions have mostly been disingenuous, intentionally misleading, and meant to increase the cost and time of defending this case. *See* Fed. R. Civ. P. 11(b)(1)–(4). These violations and conduct further support dismissal with prejudice because they suggest an overarching strategy to burden Defendants with meritless claims, arguments, motions, and briefs. *See Good Stewardship Christian Ctr.*, 341 F.3d at 797; *see also* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Plaintiffs try to excuse all these violations by claiming that mitigating circumstances exist. Speaking in the first person on their behalf, Ms. Duma tries to downplay the willful violations of orders and the Federal Rules of Civil Procedure by claiming that she does not practice in federal court much and is not very experienced in this type of law.

To be sure, health or other issues outside of the party or attorney's control can mitigate the violation of a court order or the Federal Rules of Civil Procedure. *See, e.g., Smith*, 526 F.3d at 405 ("In this case, Smith was simply incapable of complying with the discovery deadlines because of, among other things, a serious health problem which required surgery."). The Court is always mindful that lawyers are people and that the vagaries of life can sometimes lead to missed deadlines, regrettable mistakes, or other errors. When circumstances outside a party or attorney's control cause periodic case disruptions and mistakes and the party or attorney provide good cause for the missteps, the Court will decline to impose sanctions.

But that is not what happened here. To the contrary, Ms. Duma is trying to excuse a multitude of rule and order violations by claiming lack of experience. This strategy fails for several

13

reasons.  First, the Court finds that Ms. Duma is not as inexperienced as she claims to be.  She previously litigated a complex property lawsuit before the undersigned all the way through summary judgment and settlement, winning several motions along the way.  *See Domino Two, LLC v. Auto-Owners Ins. Co.*, 4:21-cv-00050-DGK, ECF No. 146 (W.D. Mo. Sept. 22, 2022) (case dismissed with prejudice after the parties had settled the matter on the eve of trial).  And she also holds herself out on her website as an experienced real estate litigator, including experience with ordinances and other issues in this case.  *See* Exhibit 1, Webpage Printout from Homepage of MDKC Law, *available at* https://megandonly.com/ (last visited on July 7, 2025).  Second, even if she did not have this experience, an attorney has an ethical obligation to be competent in the types of cases they choose to litigate.  If she was not experienced enough to litigate these cases, she should have retained experienced and competent counsel to file the lawsuits.  This is especially true here since Ms. Duma has been representing not just her companies, but other's as well.

The Court has given Plaintiffs many chances to have their claims heard on the merits.  But they have failed to heed the Court's warnings or take advantage of the many opportunities to replead their claims.  In doing so, Plaintiffs have willfully violated the Order and the Federal Rules of Civil Procedure.  This conduct is not only egregious, but also inexcusable.

### B. Plaintiffs' actions have prejudiced Defendants.

Defendants argue that they have been prejudiced by expending unnecessary time and resources defending against this meritless litigation.  For example, Defendants highlight the need to recently replace their counsel because Plaintiffs sued the City's original attorneys.  Plaintiffs counter that Defendants will not have to respond to any more pleadings because this is Plaintiffs' last chance, and the counsel would not have been sued if they did not act unconstitutionally.

The Court finds that Defendants have been prejudiced by Plaintiffs' violation of the Order and the Federal Rules of Civil Procedure. The Complaint violated the Order and the federal pleading standards, forcing Defendants to obtain new counsel, get her educated on the case, and have her draft eighty-pages of briefing to defend against the latest round of meritless claims. This caused Defendants to needlessly waste valuable time, money, and manpower. The waste is more egregious when one considers that similar instances happened repeatedly throughout Lawsuit I and II. For example, in Lawsuit I, Defendants were forced to waste significant time and resources producing 110 pages of briefing that eventually resulted in dismissal at the pleading stage. In Lawsuit II, Defendants have produced 141 pages of briefing to defend a case that is still at the pleading stage. Moreover, the time waste here is even more than in the normal case because Plaintiffs' pleadings and briefs are so disorganized, contradictory, incoherent, and unsupported that it takes extra time to try to discern what claims and arguments they are raising.

The Court finds that Plaintiffs' arguments about why they sued opposing counsel are frivolous. The Court cannot remember a single case where a represented party sued the opposing side's counsel during the litigation. To be sure, there may be situations where a claim against opposing counsel may be appropriate. But that is not the case here: there is no basis for the claims against counsel for all the reasons stated in Defendants' motion to dismiss. The only fathomable reasons why Plaintiffs have sued opposing counsel would be to burden Defendants to coerce them into settling this case and/or to attempt to access attorney-client privileged documents and communications under the guise of a claim. Either purpose is improper and potentially sanctionable by itself. *See* Fed. R. Civ. P. 11.

Overall, Defendants have been prejudiced by Plaintiffs' violation of the Court's Order and the Federal Rules of Civil Procedure.

**C. Plaintiffs' actions have burdened the Court's docket and the administration of justice.**

Like Defendants, the Court has also expended an immense amount of time and resources deciding these motions. The Court has pored through the extensive briefing, tried to discern what claims the pleadings are alleging, and conducted significant independent research on Rule 41(b) caselaw and the merits of the claims. This case has required even more time and attention than any case in recent memory because Plaintiffs pleadings and briefs are so voluminous, yet meritless. The time the Court has dedicated to trying to untangle Plaintiffs' filings and then draft orders aimed at getting them to just follow the rules is time that was taken away from adjudicating the meritorious cases on its docket, delaying justice for those litigants. All of this could have been avoided if Plaintiffs had simply heeded the Court's repeated admonitions and followed the Federal Rules of Civil Procedure from the start. But they chose not to do so.

**D. Plaintiffs were warned, and no lesser sanction is appropriate.**

Aside from the above core factors, the Eighth Circuit also considers whether a warning was provided, *Rodgers*, 135 F.3d at 1221, and whether any lesser sanctions were considered, *Smith*, 526 F.3d at 406.

On the warning front, the Court repeatedly admonished Plaintiffs throughout Lawsuit I and II that their conduct—including, violating courts orders—was unacceptable. In the Order, the Court made clear that they should draft their complaint carefully because they "will not get a fifth bite at the apple." Lawsuit II, ECF No. 37 at 2. While the Court could have put it more bluntly (e.g., "or the case will be dismissed"), Plaintiffs understood the Court's admonition since they admitted that this was their last chance. *See* Lawsuit II, ECF No. 52 at 5, 14 (repeating the last "bite at the apple" statement). And in any event, the purpose behind the warning is to ensure that Plaintiffs have notice of potential dismissal, a chance to respond, and/or a chance to reform their

16

conduct. *See Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 666 (7th Cir. 2006). They were warned here not only by the last "bite" language, but also by Defendants' Rule 41(b) motion. *See id.* When they received either warning, they could have reversed course and conformed their pleadings to the Order and the Federal Rules of Civil Procedure. But they chose to keep plowing ahead down their reckless path.

That leaves the issue of lesser sanctions. The Court has already imposed the sanction of striking pleadings, motions, and briefs for violating the Court's orders. Those sanctions did not discourage Plaintiffs in the slightest, as they just kept violating orders. So striking is not enough. Nor does the Court find that monetary sanctions will have any impact on them. Given Plaintiffs' heedless determination to litigate this case their way, no amount of they could afford to pay would curb their misbehavior going forward. *See Houston v. Klaverkamp*, No. 4:22-CV-371 RLW, 2023 WL 4350940, at *1 (E.D. Mo. July 5, 2023) ("The Court considered less drastic alternative sanctions but concluded there was no reason to believe that Plaintiffs would ever comply with applicable rules and the Court's orders, and that Plaintiffs were determined [to] litigate this case 'their own way.'"), *aff'd,* No. 23-2644, 2023 WL 7899508 (8th Cir. Nov. 16, 2023). Dismissal without prejudice would also be insufficient because then they would be free to refile the action and continue their egregious behavior again after simply paying another filing fee.

The Court finds that dismissal with prejudice is the only appropriate sanction. The Court does not reach this conclusion lightly. Plaintiffs and Ms. Duma have exhibited a litigation strategy that is burdensome and oppressive. They have repeatedly filed lengthy and meritless pleadings, briefs, and motions. They have even sued their opposing counsel. This was not an accident, inadvertence, negligence, or inexperience. Based on the Plaintiffs' actions throughout Lawsuit I and II as well as the Court's prior experience with Ms. Duma in another case, the Court finds that

17

this was a purposeful and calculated litigation strategy to try to burden the City's attorneys in hopes that they would capitulate into settling the case. Consequently, this case is DISMISSED WITH PREJUDICE.

That is not all, however. Plaintiffs and Ms. Duma's conduct has been so egregious that the Court considered initiating criminal contempt proceedings. *See* 18 U.S.C. § 401(3); *see also United States v. Smith*, 502 F. Supp. 2d 852, 857 (D. Minn. 2007). But the Court declines to do so at this time. If Plaintiffs and/or Ms. Duma engage in similar conduct in any future cases, the Court will initiate criminal contempt proceedings against them.

**II.    The complaint is also subject to dismissal under Rule 12(b)(6).**

Even if the Court denied the Rule 41(b) motion to dismiss, it would still dismiss the Complaint because it does not state a short, plain, and plausible claim for relief for all the reasons stated in Defendants' motion to dismiss. *See Iqbal*, 556 U.S. at 678 (plausibility standard); *see also Residential Funding Co., LLC v. Bell State Bank & Tr.*, 637 F. App'x 970, 971 (8th Cir. 2016) (complaint dismissed for failing to satisfy the short and plain statement rule); *Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (same).

**Conclusion**

For the reasons stated above, Defendants' motions are GRANTED, and this case is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Date: July 7, 2025          /s/ Greg Kays
                            GREG KAYS, JUDGE
                            UNITED STATES DISTRICT COURT